[Civ. No. 15147.   First Dist., Div. Two.   Dec. 15, 1952.]

MELVIN LEE GRANT, a Minor, etc., et al., Appellants,
v. JAMES COLEMAN SCOTT, Respondent.

Joseph A. Brown for Appellants.

Bronson, Bronson & McKinnon for Respondent.

JONES, J. pro tem.—This is an action arising out of a collision between two automobiles on Highway 101 near San Rafael in Marin County. One car was owned and driven by the respondent, Scott, and the other was owned by Leon Grant. At the time of the accident the Grant car was being driven by Melvin Lee Grant, son of the owner, and with his father's permission. Miss Goodin, later Mrs. McCamey, was riding as a passenger in the Grant car. She and the young Mr. Grant had been to a dance at the Marin Town and Country Club and were returning to San Francisco. Mr. Scott, a teacher in Marin College, was also on his way to San Francisco, and riding with him was a young man named Norman Brown, who at the time of the trial was with the Air Corps in Alaska and was not available as a witness. The accident occurred between 2 o'clock and 2:30 o'clock in the morning at a point on the highway southerly from the crest of a hill near the Corte Madera intersection. Both cars were practically demolished and Miss Goodin and young Grant severely injured. Scott was also injured but not so seriously as the others.

The evidence is in conflict as to just how far from the crest of the hill impact took place. Grant places it at about 200 yards distant, while Scott fixed the point as much closer to the hilltop. From the record it appears that at the point where the highway passes over the crest there is a curve in it. For some distance either way the highway consists of four lanes, two for southbound and two for northbound traffic.

According to Scott, he was driving southerly toward San Francisco in his own right hand or outer lane of the highway at about 45 or 50 miles per hour with his headlights on low beam. Immediately after he cleared the crest of the hill his headlights picked up the Grant car some 10 or 14 feet distant from him. He immediately applied his brakes and swerved to the left but was unable to avoid striking the Grant car. The right front of his car struck the left rear of the Grant car turning it over.

Scott testified that when he first saw the Grant car it was without lights and was stopped to the right of the middle line of the right hand lane of the highway, and that there was no other traffic on the highway to afford illumination. The driver of the Grant car testified that both the rear light and the headlights were on when they were struck, and both he and his passenger testified that their car was in motion and proceeding at the rate of about 20 miles per hour.

Mr. Barclay of the Highway Patrol testified that the point of impact was "In the curved lane, yes the outside lane." Scott testified: "Q. Were you going down hill when you hit——A. I hit them downhill. It was parked just below the crest. Q. Going downhill? A. Very slightly downhill. Q. Not enough to interfere with your headlights showing objects between 14 and 15 feet away? A. Yes. Q. You think it reduced your ability to see cars ahead? A. Yes. . . . Q. If you were not going over the crest of the hill you wouldn't have seen this car 15 feet away? A. I think so. . . . Q. Your testimony is it was stopped in the same lane of traffic you were in, however slightly to the right of that lane of—— A. Very slightly to the right. Q. Could you determine whether there were any lights on the rear of the car at that time? A. There were no lights on the rear of the car."

The testimony of Scott places the Grant car where the beam of his headlights could not pick it up because of the curved highway and its declivity from the crest of the hill.

The complaint against Scott is in three separate counts, and all counts charge him with negligence in the operation of his automobile. In the first count, Leon Grant the owner, seeks to recover for the loss of his car; in the second count, the son seeks redress for his injuries; and in the third count, Mrs. McCamey seeks to recover damages for the injuries which she sustained. In his answers to the respective counts of the complaint Scott denied the allegations of negligence, and as an affirmative defense to counts one and two he alleged contributory negligence on the part of the driver and the owner of the Grant car. He also filed a cross-action against the owner and operator of the Grant car charging negligence and asking $2,500 for his injuries plus additional sums for the loss of his car. The answer to the cross-complaint denies the allegations of negligence, and affirmatively recharges Scott with negligence.

In its instructions the court stated to the jury that, "If you find that none of the parties was negligent, then none may recover."

The jury evidently followed this instruction for it returned verdicts awarding no damages to any of the plaintiffs, and none to Scott. The verdicts are:

"We, the Jury in the above entitled cause, find that plaintiff Yvonne Goodin McCamey should take nothing against defendant, James Coleman Scott."

"We, the Jury in the above entitled cause, find that the plaintiff and cross-defendant, Melvin Lee Grant, should take nothing against defendant and cross-complainant James Coleman Scott, and that defendant and cross-complainant James Coleman Scott should take nothing against the plaintiff and cross-defendant Melvin Lee Grant."

"We, the Jury in the above entitled cause, find that plaintiff and cross-defendant Leon Grant take nothing against defendant and cross-complainant James Coleman Scott and that defendant and cross-complainant James Coleman Scott take nothing against the plaintiff and cross-defendant, Leon Grant."

It is argued, and urged as a ground for reversal, that these verdicts are inconsistent. It is also contended that the evidence is insufficient to sustain the verdicts.

■ When the evidence is conflicting and is challenged as being insufficient to support the finding of the jury or other trier of fact as is said in *Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424]: "It is the general rule that on appeal an appellate court will (a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence, (c) indulge all intendments which favor sustaining the finding of the trier of fact, and (d) not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof." Citing *California Emp. Com.* v. *Betthesda Foundation,* 54 Cal.App.2d 348, 350 [128 P.2d 874], and *People* v. *Dukes,* 90 Cal.App. 657, 659 [266 P. 558]. ■ And in determining whether the facts which the record in the case discloses are of sufficient substantiality with respect to the care exercised by the defendant so as to remove it from the realm of· negligence, it is said in *Toschi* v. *Christian,* 24 Cal.2d 354, 360 [149 P.2d 848], that, "Standards of care are typically relative; rules of law are basically absolute. Hence, in regard to negligence, any attempt to screen factual conduct into legal classifications through a sieve of absolute law will be impracticable whenever the related circumstances admit of materially conflicting inferences. In other words, the actor's conduct must always

be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law.''

In accordance with the foregoing authority any doubt arising from the conflicts in the evidence upon the issue of due care must be resolved as a matter of fact and the verdicts upheld.

When a jury has determined upon substantial facts that none of the parties involved in an automobile collision case were negligent in failing to exercise due care and that no recovery is to be had by anyone, such determination is in effect a holding that the accident was unavoidable. (*Parker* v. *Womack*, 37 Cal.2d 116, 121 [230 P.2d 823].) Under such circumstances the findings are that all parties were using that care required of a reasonable and prudent person and no basis exists for the contention that the findings are inconsistent.

Those portions of the judgment appealed from are affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied January 14, 1953, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1953. Carter, J., was of the opinion that the petition should be granted.